IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>ANA LUISA MARTÍN—ALFARO,<br><br>**Defendant.** | **Criminal No.** 20-215 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Ana Luisa Martín—Alfaro ("Martín")'s motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3) ("Rule 12(b)(3)"), for defects in the indictment and lack of jurisdiction. (Docket No. 26) For the reasons that follow, the Court **GRANTS** Martín's motion and dismisses the indictment with prejudice.

I.  BACKGROUND

The Court recounts the following facts from the indictment of July 9, 2020 and accepts them as true for purposes of considering the motion to dismiss. See United States v. Young, 694 F. Supp. 2d 25, 27 (D.Me. 2010) (citing Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952)).

Martín ran an alleged scheme to pass herself off as a facilitator of government grant applications, including to

Criminal No. 20-215 (FAB)                                              2

applicants interested in federal grants to build assisted living facilities and low-income housing in Puerto Rico.  (Docket No. 3 at p. 3)  The hopeful applicants only needed to write a check to "Federal Funds Organizations, Inc.," or "Community Helpers, Inc.," or one of the other three non-profit organizations Martín had incorporated.  Id. at pp. 1 and 3.  She told her clients that the funds would go to the federal government, were audited by the federal government, and would be used exclusively for the grant application process.  Id. at p. 4.  Unbeknownst to the applicants, Martín controlled the bank accounts for all of these organizations and used the money instead on herself for things like travel, entertainment, and auto expenses.  Id.

In total, Martín received 34 checks over about five years, paid by her clients from their accounts at federally insured financial institutions.  Id. at pp. 5-6.  The United States is charging her with 34 counts of bank fraud, pursuant to 18 U.S.C. § 1344(2).  (Docket No. 3 at p. 2)

The issue is, as Martín raises in her June 1, 2021 motion to dismiss, that the indictment does not allege that she made any misrepresentation to her clients' banks, only to her clients.  (Docket No. 26 at p. 2-6)  Martín argues, therefore, that the indictment does not state an offense pursuant to the bank fraud statute.  Id.  The Court agrees.

Criminal No. 20-215 (FAB)                                              3

**II.  LEGAL STANDARD**

Rule 12(b)(3) allows a defendant to raise in a pretrial motion that the indictment is defective for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).  Federal Rule of Criminal Procedure 7(c)(1) ("Rule 7(c)(1)") requires that the indictment state the "essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient "if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he [or she] must defend, and enables him [or her] to enter a plea without fear of double jeopardy." United States v. Ford, 839 F.3d 94, 104 (1st Cir. 2016) (internal quotation marks and citation omitted).  "It is axiomatic that the elements alleged must amount to an offense."  United States v. Meacham, 626 F.2d 503, 507 (5th Cir. 1980) (vacating defendant's conviction because "the elements listed in the indictment failed to state an offense against the United States" and therefore "the indictment was insufficient and should have been dismissed."), *overruled on other grounds by* United States v. Cothran, 302 F.3d 279 (5th Cir. 2002).

**III. DISCUSSION**

Martín argues in her motion to dismiss that the allegations in the indictment do not charge a crime and do not allege the essential elements of the offense as required by Rule 7(c)(1).

Criminal No. 20-215 (FAB)                                                4

(Docket No. 26 at p. 1)  Martín explains that the Supreme Court has held that, to commit bank fraud pursuant to section 1344(2), a person's false statement must be the means by which the person obtained bank property; it is not enough that the person made a false statement if that statement never reached the bank.  Id. at pp. 2—6 (citing Loughrin v. United States, 573 U.S. 351 (2014)). Martín's lie to her clients that she was a real grant facilitator was not passed on to the banks.  Id.  For this reason, the indictment does not state the offense of bank fraud as alleged, and must be dismissed.[1]  Id. at p. 8.

The government argues that the indictment has all the elements of the offense because financial institutions were affected by the defendant's fraudulent scheme.  (Docket No. 27 at p. 4)  Since Martín made fraudulent representations to the individuals whose money the financial institutions were controlling, and she did so to obtain that money, the indictment tracks the language of the statute and properly alleges bank fraud.  Id.

---

[1] Martín also argues that the indictment fails to allege that the money taken was property under the custody or control of a financial institution.  See Docket No. 27 at p. 6—7.  Because the Court dismisses this indictment based on Martín's first argument it declines to reach this issue.

Criminal No. 20-215 (FAB)                                                5

### A.   Bank Fraud

Bank fraud pursuant to 18 U.S.C. § 1344(2) requires the government to show that the defendant knowingly executed, or attempted to execute, a scheme or artifice:

- to obtain any of the moneys . . . or other property
- owned by, or under the custody or control of, a financial institution,[2]
- **by means of** false or fraudulent pretenses, representations, or promises.

18 U.S.C. § 1344(2) (emphasis added).

In Loughrin, the Supreme Court clarified that to commit bank fraud pursuant to section 1344(2), the accused did not need to intend to defraud a financial institution specifically, but the person's false representation must be one that would naturally induce a bank to part with money within its control. Loughrin, 573 U.S. at 363.  In that case, the defendant had brought forged checks to the retailer Target, used them to buy goods, and then returned the goods for cash.  Id. at p. 353.  He argued that he had not committed bank fraud since his intention was to defraud Target, not the bank who ultimately cashed some of the checks.

---

[2] The statute defining 'financial institution' refers to the multiple financial entities with backing by the federal government, for example an insured depository institution as defined by the Federal Deposit Insurance Act.  See 18. U.S.C. § 20.

Criminal No. 20-215 (FAB)                                                6

Id. at p. 356.  The court held that the text of section 1344(2) does not require that the accused intend to defraud a financial institution specifically.  Id. at 356–57.  The accused's false representations, however, must be the 'means of' obtaining the bank property, *i.e.* they are the type of false statement, like a forged check, that would naturally induce a bank to hand over money.  Id. at pp. 362–63.  The statute, therefore, does not make a federal crime out of every run–of–the mill fraud.  Id. at p. 365.  To clarify the difference, the court contrasted the defendant's false representation with a hypothetical counterfeit luxury purse seller.  Id. at 361.  In that example, a fraudster lies to the prospective buyer that the knock–off purse is a genuine Louis Vuitton, and in reliance on that misrepresentation, the buyer writes a real check, which the peddler then cashes.  Id.  While the seller did lie to get the money ultimately held by the bank, the lie that 'the purse is genuine' is not one that would naturally induce a bank to hand over money.  Id. at p. 364–65.  So, a lie that is the mere 'but for' cause of obtaining bank property is not sufficient, it must be a lie that "will . . . reach the bank." Id. at p. 365 n.8.

The First Circuit Court of Appeals analyzed the "by means of" language in the context of a mail fraud accusation following the Loughrin decision, and vacated the defendants' conviction,

finding that the fraud alleged was not the 'means of' obtaining the money.  United States v. Berroa, 856 F.3d 141, 148–49 (1st Cir. 2017) (noting that the mail fraud statute has identical causal language to the bank fraud statute).  In that case, doctors who had received their medical licenses by faking their test scores did not obtain money from their future patients 'by means of' the lie about their test scores.  Id. at p. 149–50.  The lie was to the licensing board and did not travel to their future patients.  Id.

Both courts emphasized that federalism concerns require cabining federal criminal statutes that, if interpreted too broadly, risk encroaching on a state's criminal jurisdiction. See Loughrin, 573 U.S. at 362 ("As we have often (and recently) repeated, 'we will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction.'") (quoting Bond v. United States, 572 U.S. 844, 858–59 (2014)) (citations omitted); Berroa, 856 F.3d at 149 ("This limitation assuaged federalism concerns about infringing on state criminal jurisdiction.")  Essentially, courts should beware of interpreting statutes in a way that turns every crime into a federal crime.

On the fraud spectrum established by Loughrin, Martín was a fake purse seller, not a check forger.  The banks did not

Criminal No. 20-215 (FAB)                                                8

give Martín money because of her lie that she was a federal grant facilitator. They gave her money because their own account holders asked them to. Her false statements were not a means to naturally induce the banks to give her the money they held. See Loughrin, 573 U.S. at 363. In fact, the banks probably never heard her lie, akin to the patients of the fraudulently licensed doctors in Berroa. See Berroa, 856 F.3d at p. 149—50. The lie stayed with the individual victims; it did not travel to the banks. See Loughrin, 573 U.S. at p. 365 n.8.

Contrary to the government's argument that 34 counts of bank fraud exist where a "financial institution was affected," (Docket No. 27 at p. 4,) some closer nexus is needed to state an offense under section 1344(2). See Loughrin, 573 U.S. at p. 365. Otherwise, "every pedestrian swindle happening to involve payment by check, but in no other way affecting financial institutions" would become a federal crime. See Loughrin, 573 U.S. at p. 362.

The Court makes no opinion on whether there may be some federal interest in prosecuting Martín, but that interest is not in protecting federally insured banks who were never lied to during this scheme.

Criminal No. 20-215 (FAB) 9

**IV. CONCLUSION**

For the reasons set forth above, Martín's motion to dismiss, (Docket No. 26,) is **GRANTED**. This case is **DISMISSED with prejudice**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 11, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE