**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff**,

          **v.**                        **Criminal No.** 20-215 (FAB)

ANA LUISA MARTÍN—ALFARO,

    **Defendant**.

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is the United States ("the government")'s motion for reconsideration of the dismissal of the indictment against defendant Ana Luisa Martín—Alfaro ("Martín"). (Docket No. 33.) For the reasons set forth below, the motion for reconsideration is **DENIED**.

**I.    BACKGROUND**

On August 11, 2021, the Court issued a Memorandum and Order granting Martín's motion to dismiss on the grounds that the indictment failed to state an offense for bank fraud. (Docket No. 31.) The government now moves for reconsideration, arguing that the Court conducted an improper analysis of the sufficiency of the evidence. (Docket No. 33.)

The Court summarizes the following facts from the indictment to provide context for its decision on the government's motion for

reconsideration.  <u>See</u> Docket No. 3.  "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true."  <u>United States v. Ngige</u>, 780 F.3d 497, 502 (1st Cir. 2015).

On July 7, 2020, the government indicted Martín for running a scheme to pass herself off as a facilitator of government grant applications, including to applicants interested in federal grants to build assisted living facilities and low—income housing in Puerto Rico.  (Docket No. 3 at p. 3.)  The applicants would write a check to one of the five non—profit organizations Martín had incorporated, and she told them that the funds would go to the federal government, were audited by the federal government, and would be used exclusively for the grant application process.  <u>Id.</u> at pp. 1, 3 & 4.  Unbeknownst to the applicants, Martín controlled the bank accounts for all of these organizations and instead used the money on herself for things like travel, entertainment, and auto expenses.  <u>Id.</u> at p. 4.

The indictment alleges specifically that Martín:

> did knowingly and with intent to defraud, devised [sic] a scheme and artifice to obtain monies under the custody and control of Banco Popular, Santander Bank, FirstBank Puerto Rico, TD Bank, Oriental Bank, and USAA Federal Savings Bank, all financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses . . . **that is, she materially misrepresented the purpose of payments and required monies be paid by various clients through their financial institutions to corporate accounts controlled by Ana Luisa Martín Alfaro**, all in violation of Title 18 United States Code, § 1344(2).

Id. at p. 2—3 (emphasis added). The indictment lists the 34 checks Martín's clients allegedly wrote to her Potemkin non—profits from their own bank accounts, and charges her with 34 counts of bank fraud pursuant to 18 U.S.C. section 1344(2). Id. at pp. 2 & 5—6.

The Court dismissed the indictment for failure to state an offense because the allegations in the indictment do not include a misrepresentation that was the "means of" obtaining bank property within the Supreme Court's definition of that phrase in Loughrin v. United States, 573 U.S. 351 (2014). (Docket No. 31.) This motion for reconsideration followed, (Docket No. 33,) which Martín opposed. (Docket No. 35.)

## II.  LEGAL STANDARD

### A.  Motion for Reconsideration

The Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration. See United

States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (citation omitted) ("[M]otions for reconsideration in criminal cases are not specifically authorized either by statute or by rule.").  The First Circuit Court of Appeals, however, applies the civil standard for a motion for reconsideration to criminal cases.  See, e.g., United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).  On a motion for reconsideration, a district court will alter its original order only if "the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  Allen, 573 F.3d at 53.

A motion for reconsideration "does not exist to allow parties a second chance to prevail on the merits . . . [and] is not an avenue for litigants to reassert arguments and theories that were previously rejected by the Court."  Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 322 F.R.D. 439, 441 (D.P.R. 2017) (Besosa, J.) (citations omitted).  In deciding a motion for reconsideration, the reviewing court has considerable discretion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004).  "As a general rule, motions for reconsideration should only be exceptionally granted."  Villanueva-Méndez v. Nieves-Vázquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (Domínguez, J.).

**B.   Sufficiency of an Indictment**

Federal Rule of Criminal Procedure 7(c)(1) lays out the requirements for an indictment. Fed. R. Crim. P. 7(c)(1). It states that the indictment "must be a plain, concise, and definite written statement of the essential facts **constituting the offense charged**." Id. (emphasis added).  To accord with a defendant's constitutional rights, "the black-letter rule" is that "an indictment is sufficiently particular if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense." United States v. Sepúlveda, 15 F.3d 1161, 1192 (1st Cir. 1993)(citing Hamling v. United States, 418 U.S. 87, 117 (1974)).  While the government cites United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) for the proposition that the only requirement of an indictment is that it "appraise[s] the defendant of the charged offense," (Docket No. 33 at p. 3,) Stepanets itself repeated that "outlin[ing] 'the elements of the crime'" is a requirement for a valid indictment.  See Stepanets, 879 F.3d at 372 (citing United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011)).

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move to dismiss the indictment for defects, including

failure to state an offense.  See Fed. R. Crim. P. 12(b)(3)(B)(v).
The First Circuit Court of Appeals indicated in United States v.
Rodríguez-Rivera that this defense "must be raised by pretrial
motion when 'the basis for the motion is then reasonably available
and the motion can be determined without a trial on the merits,'"
and, "[f]or this reason, [a] district court [is] certainly correct
to entertain such a pretrial motion claiming that the indictment
failed to state a criminal offense."  918 F.3d 32, 34 (1st Cir.
2019) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)).  "What counts in
situations like this are the charging paper's *allegations*, which
we must assume are true." Guerrier, 669 F.3d at 3—4 (discussing
the standard for determining the sufficiency of a criminal
indictment) (emphasis in original).

A motion to dismiss based on failure to state an offense
requires the district court to determine whether the indictment's
allegations are sufficient, not to weigh, pre—trial and on a
contested record, whether the government has sufficient evidence
to establish that the offense was committed. Compare United States
v. Espy, 145 F.3d 1369, 1372—74 (D.C. Cir. 1998)(affirming district
court's dismissal of one count of the indictment for failure to
state an offense, based on the court's interpretation of the
meaning of the words "department" and "agency" as not reaching the
executive office of the president and therefore not the defendant),

with <u>United States v. Stepanets</u>, 879 F.3d at 373-74 (reversing district court dismissal of indictment where defendant's motion was actually a factual argument that the defendants did not perform pharmacy duties within the meaning of the statute, rather than a legal argument that the indictment did not plead sufficient facts). The former is proper for a pre-trial motion to dismiss, while the latter is premature before facts are presented to the factfinder or stipulated to by the parties.   See <u>Ngige</u>, 780 F.3d at 502 (affirming district court denial of motion to dismiss the indictment where the defendant's argument "rested on factual disputes left to the factfinder").   The former, however, is essential for conserving judicial resources and establishing judicious bounds on potentially expansive criminal law.[1]

---

[1] See James M. Burnham, <u>Why Don't Courts Dismiss Indictments? A Simple Suggestion for Making Federal Criminal Law a Little Less Lawless</u>, 18 Green Bag 2d 347, 354 (2015) ("In cases where the government has overreached on the law, these expenditures are unwarranted and wasteful. Courts ought to have a realistic mechanism for saying so at the outset."); Russell M. Gold et. al., <u>Civilizing Criminal Settlements</u>, 97 B.U. L. Rev. 1607, 1644 (2017)("Defendants in criminal cases have at least as strong of an interest in screening out weak or meritless charges against them as civil defendants. After all, criminal charges threaten the defendants' liberty instead of just their finances."); James Fallows Tierney, <u>Summary Dismissals</u>, 77 U. Chi. L. Rev. 1841, 1862-63 (2010) (arguing that because pre-trial decisions on motions to dismiss are appealable while pre-verdict Rule 29 judgments of acquittal are not, "[b]y considering summary dismissals—and not deferring ruling on the defendant's dispositive legal challenge—courts uphold the FRCrP 12(d) policy favoring appellate rights. . . . This could be especially important in marginal cases involving 'creative' prosecutions where the government is unsure whether the indicted conduct even fits within the statute.").

## IV. DISCUSSION

### A.  Motion to Dismiss for Failure to State an Offense

The government argues in its motion for reconsideration that the Court made a manifest error of law by determining, over the government's objection, whether the allegations in the indictment were sufficient to establish the charged offense, citing to United States v. Rodríguez-Rivera, 918 F.3d 32, 35 (1st Cir. 2019). (Docket No. 33 at p. 3.) The government additionally argues that the indictment meets the pleading standard under Rule 7(c)(1) and that the Court improperly weighed the 'sufficiency of the evidence' when it dismissed the indictment. Id. at p. 3—4.

Martín opposes the government's motion and argues that the indictment was ripe for dismissal pursuant to Rule 12(b)(3)(B)(v) because the Court properly took the facts as alleged in the indictment as true and found that they do not allege a necessary element for bank fraud as established by Supreme Court precedent. (Docket No. 35 at p. 2.)  The Court agrees.

The First Circuit Court of Appeals carefully stated in Rodríguez—Rivera that "**in this case**" a motion to dismiss did not provide the occasion for determining whether the indictment's facts established the charged offense. Rodríguez—Rivera, 918 F.3d at 33 (emphasis added). Rodríguez—Rivera does not stand for the proposition that a motion to dismiss the indictment is never

proper; on the contrary, the court stated that "the district court was certainly correct to entertain such a pretrial motion claiming that the indictment failed to state a criminal offense." Id. at 34 (citing Fed. R. Crim. P. 12(b)(3)(B)(v)).

In Rodríguez-Rivera, the district court determined if, on the allegations in the indictment, the defendants, who were accused of identity theft for filing fraudulent reimbursement forms to Medicare, had "used" a means of identification of another person within the meaning of that term, as established by recent caselaw interpreting the criminal statute 18 U.S.C. section 1028A. Id. at 33–34. The district court erred because, "[i]n nevertheless dismissing the indictment, the district court did not question that § 1028A is a criminal offense, that the indictment recited its elements properly, or that the indictment identified the defendants' conduct said to have constituted the offense." Id. at 35. Instead, although the indictment alleged that the claim forms must be read to assign the identified beneficiaries' benefit claim to the defendants, the district court held that the indictment failed to show that the defendants had submitted the claim forms as representatives of the beneficiaries, even though there was no stipulation of facts, nor a record with the forms themselves or Medicare's interpretations of the forms. Id. The First Circuit Court of Appeals explained that "[w]hether such transfer of rights

somehow also connotes permission to act on behalf of the assignor
is unclear on the limited record as it now stands, as is whether
the conduct alleged constitutes a requisite transfer or possession
of the beneficiaries' personal identifying information." Id. at
35-36.   A factual record would be necessary to reach that
conclusion and thus the court was premature in deciding that this
element was missing based on the indictment alone, which
sufficiently "identified the conduct said to have constituted the
offense." Id.

          Thus, the Court does not agree with the government's
argument that Rodríguez-Rivera prevents this Court from
determining, over the government's objection, whether the
allegations in the indictment were sufficient to state an offense
pursuant to Rule 12(b)(3)(B)(v).  (Docket No. 33 at p. 3.)  As
Martín points out, this interpretation would make Federal Rule of
Criminal Procedure 12(b)(3)(B)(v) inoperative and erode the
Court's innate power to determine questions of law.  See Docket
No. 35 at p. 2; Cf. United States v. Bergrin, 650 F.3d 257, 268
(3d Cir. 2011) ("Generally speaking, [12(b)(3)(B)(v)] is a narrow,
limited analysis geared only towards ensuring that legally
deficient charges do not go to a jury.").  Questions of law that
require facts outside the indictment would certainly need to
proceed with a set of stipulated facts, as there is no direct

'summary judgment' right in the criminal procedure rules.  Cf. United States v. Musso, 914 F.3d 26, 29-30 (1st Cir. 2019) ("a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts.")(quoting United States v. Weaver, 659 F.3d 353, 355 n* (4th Cir. 2011)).  But where the legal question is the sufficiency of the indictment, the Court imagines few defendants would be able to avail themselves of the procedures of the federal rules if the consent of the government were required before pre-trial defenses could be raised.

Because a motion for reconsideration is "not an avenue for litigants to reassert arguments and theories that were previously rejected by the Court," the Court will not spend considerable time re-analyzing the Supreme Court's decision in Loughrin.  See Johnson & Johnson Int'l, 322 F.R.D. at 441.  The Supreme Court stated plainly, however, that bank fraud pursuant to section 1344(2) has two elements, the second being "that the envisioned result—*i.e.,* the obtaining of bank property—occur 'by means of false or fraudulent pretenses, representations, or promises.'"  Loughrin, 573 U.S. at 355-56.

The Supreme Court explained that the accused's false representations, therefore, must be the 'means of' obtaining the

bank property, *i.e.* they are the type of false statement, like a
forged check, that would naturally induce a bank to hand over
money. Loughrin, 573 U.S. at 362—63. The statute, therefore,
does not make a federal crime out of every run—of—the mill fraud.
Id. at 365. To clarify the difference, the court contrasted the
defendant's false representation with a hypothetical counterfeit
luxury purse seller. Id. at 361—65. In that example, a fraudster
lies to the prospective buyer that the knock—off purse is a genuine
Louis Vuitton, and in reliance on that misrepresentation, the buyer
writes a real check, which the fraudster then cashes. Id. While
the seller did lie to get the money ultimately held by the client's
bank, the lie that 'the purse is genuine' is not one that would
naturally induce a bank to hand over money. Id. at 364—65. So,
a lie that is the mere 'but for' cause of obtaining bank property
is not sufficient, it must be a lie that "will naturally reach .
. . a bank." Id. at 365 n.8.

     The Supreme Court cautioned that "[o]f course, the bank
would not have disbursed funds had the misrepresentation never
occurred . . . . But as we have said, § 1344(2)'s 'by means of'
language requires more, . . . [i]t demands that the defendant's
false statement is the mechanism naturally inducing a bank (or
custodian) to part with its money." Id. at 364-65. So, in the
example above, a swindler who accepts a real check for a fake

designer purse has not committed bank fraud, because "in such a case **the check is perfectly valid; so the check itself is not (as it was here) a false or fraudulent means of obtaining bank money.**" Id. at 364 (emphasis added).

     To summarize, a valid indictment must elucidate the elements of the crime.  See Sepúlveda, 15 F.3d at 1192.  An indictment that does not allege facts that correspond to an element of the crime does not state an offense.  See Bergrin, 650 F.3d at 268 ("[The court's] determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict.")  Bank fraud pursuant to section 1344(2) has two elements, the second being "that the envisioned result—i.e., the obtaining of bank property—occur 'by means of false or fraudulent pretenses, representations, or promises.'"  Loughrin, 573 U.S. at 355–56.

     There is no fact alleged in the indictment where a false statement is the "means of" obtaining bank property.  Cf.  Id. at 362–65.  The indictment alleges that Martín "materially misrepresented the purpose of payments and required monies be paid by various clients through their financial institutions to corporate accounts controlled by Ana Luisa Martín Alfaro." (Docket No. 3 at p. 2–3.)  The false statement is to the clients, and it

is not of a type that naturally induces banks to hand over property.  See <u>Loughrin</u>, 573 U.S. at 364 ("in such a case the check is perfectly valid; so the check itself is not (as it was here) a false or fraudulent means of obtaining bank money.").  Even if all the facts alleged in the indictment were proved at trial, they would not make out the elements of bank fraud, making the defense's motion to dismiss suitable for determination in a pre-trial motion.  <u>See</u> Rule 12(b)(3); <u>United States v. Covington</u>, 395 U.S. 57, 60 (1969)("A defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.").

The Court thus disagrees with the government that granting a motion to dismiss at this stage is improper, or that the Court's dismissal analyzed the sufficiency of the evidence rather than the sufficiency of the indictment.

B.  **<u>Loughrin</u> and *Dicta***

To escape what appears to the Court an apt application of <u>Loughrin</u>'s reasoning to the allegations against Martín, the government argues that <u>Loughrin</u>'s five pages of analysis of the phrase "by means of" should be disregarded as *dicta*.  (Docket No. 33 at p. 6-7.)

Martín cautions that the words of the Supreme Court should not be hastily disregarded, whether *dicta* or not. (Docket No. 35 at pp. 4-5.) This Court agrees with Martín.

The Court is not persuaded that these statements by the Supreme Court were *dicta*, but even if they were, this Court cannot easily dispense with the carefully considered statements of the Supreme Court. See McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 19 (1st Cir. 1991) ("a carefully considered statement . . . , though technically dictum, must carry great weight, and may even . . . be regarded as conclusive.") (quoting Charles A. Wright, The Law of Federal Courts, § 58, at 374 (4th ed. 1983)). The First Circuit Court of Appeals cautioned that "[i]f lower courts felt free to limit Supreme Court opinions precisely to the facts of each case, then our system of jurisprudence would be in shambles, with litigants, lawyers, and legislatures left to grope aimlessly for some semblance of reliable guidance." Id.

The Court declines the government's invitation to disregard the "carefully considered statement[s]" of the Supreme Court. See McCoy, 950 F.2d at 19. The Supreme Court's analysis of "by means of," which has been applied in subsequent cases by the First Circuit Court of Appeals, see United States v. Berroa, 856 F.3d 141, 148—54 (1st Cir. 2017), is at a minimum persuasive and the Court sees no reason to depart from both courts' clear

interpretative direction.  Id.  The Court is thus not persuaded to reconsider its dismissal on this ground.

**V.   CONCLUSION**

For the reasons discussed above, the Court **DENIES** the government's motion for reconsideration.  (Docket No. 33.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 15, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
